**Albert LEWIS, et al., Plaintiffs,**

v.

**NATIONAL FOOTBALL LEAGUE, et al., Defendants.**

**Civ. A. No. 91–2685 (RCL).**

United States District Court, District of Columbia.

Nov. 3, 1992.

---

6

See also 813 F.Supp. 1.

Richard Ben–Veniste, James W. Quinn, Jeffrey L. Kessler and David G. Feuer, Weil, Gotshal & Manges, New York City, for plaintiffs.

Herbert Dym, Gregg M. Levy, Sonya D. Winner, Covington & Burling, Washington, DC, and Frank Rothman and Shepard Goldfein, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, CA, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

(Preliminarily Denying Class Certification)

This matter comes before the court on Plaintiffs' Motion for Class Certification; Memorandum of NFL Defendants in Opposition to Plaintiffs' Motion for Class Certification; Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion for Class Certification; Defendants' Motion for Leave to File a Surrebuttal Memorandum; Defendants' Surrebuttal Memorandum in Opposition to Motion for Class Certification; and Plaintiffs' Opposition to Motion for Leave to File a Surreply Memorandum.

On consideration of the arguments and authorities presented by counsel in their briefs, and for the reasons stated in this memorandum opinion, Defendants' Motion for Leave to File a Surrebuttal Memorandum is GRANTED; and Plaintiffs' Motion for Class Certification is DENIED. However, plaintiffs will be granted leave to file an amended motion for class certification.

## I. FACTS.

This action is brought by two[1] professional football players against the NFL and its twenty-eight member teams. The players purport to be representatives of a class of approximately 250 professional football players who meet the following definition:

---

1. After the case was initially filed, an amended complaint added a third plaintiff, Anthony Paige. As Mr. Paige has apparently since indicated that he would rather be a class member than a class representative, only the original two class representatives remain.

All players (except any of the named plaintiffs in *Powell v. NFL*, No. 4–87–917 (D.Minn.)), who were subject to the Plan B right of first refusal/compensation restrictions in the NFL during the 1989 NFL season, for any anti-trust claims they may have arising out of such restrictions during such season.

Plaintiffs seek a determination that the NFL's implementation of the first refusal/compensation system violates anti-trust laws and ask for trebled damages under those laws.[2]

## II. DISCUSSION.

The court is unable at this time to certify the plaintiff class. Due to the conflict of interest of the law firm representing the plaintiffs, the court finds that the class action criteria set forth in Federal Rule of Civil Procedure 23 are not met. Nonetheless, as it is likely that plaintiffs will attempt to cure that deficiency, the court will address the rest of the issues necessary for class certification at this time.

### A. *Rule 23(a)*.

Under Rule 23, a class action may only be certified if the class meets the requirements of both Rule 23(a) and 23(b). Rule 23(a) states:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). All four elements must be present before the court may certify the plaintiff class. The court finds that all criteria except the last are satisfied.

It must be noted that the court finds itself in a unique position in this case. Prior to the filing of this case, the NFL defendants filed a declaratory judgment action in the District Court for Minnesota, *NFL v. NFLPA and Hilton*, No. 3–91–CV–635 (D.Minn.) ("NFL Defendants' *Hilton* Motion"), in which the NFL sought the certification of a defendant class comparable to the plaintiff class in this case.[3] Thus, both plaintiffs and defendants have argued that some of the prerequisites exist.

1. Membership in a clearly defined class.

■ The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is "neither amorphous, nor imprecise." *Robertson v. National Basketball Ass'n*, 389 F.Supp. 867, 897 (S.D.N.Y.1975). Concurrently, the class representatives must be members of that class. As both parties have agreed, the class at issue here is precisely defined; indeed, the names of the individuals are readily available. Plaintiffs' Motion at 8; NFL Defendants' *Hilton* Motion at 12. In addition, it is clear that the representatives are members of the class.

2. Numerosity.

■ Rule 23(a)(1)'s numerosity requirement is easily satisfied in this case. Both parties agree that approximately 250 players are members of the class. Plaintiffs' Motion at 11 (250 players); NFL Defendants' *Hilton* Motion at 13 (254 players). Moreover, both parties also agree that, due to the geographical dispersion of the poten-

---

**2.** Further details about the history of this litigation may be found in the court's memorandum opinion denying Defendants' Motion to Dismiss or Transfer, or in the Alternative, for a Stay, issued this date.

**3.** The difference, the NFL defendants allege, is that the proposed defendant class in *Hilton* was purported to be for a determination only of liability, not for a determination of injury and

damages as is necessary here. Plaintiffs counter that this difference is illusory, particularly as the NFL defendants have argued in a previous motion that the injury and damage issues would be compulsory counterclaims in the *Hilton* case. Regardless, the arguments the NFL defendants used in *Hilton* are applicable to much of the discussion of the prerequisites under Rule 23(a).

tial class members, joinder is clearly impracticable. *See Vargas v. Meese,* 119 F.R.D. 291 (D.D.C.1987).

3. Common Questions of Law and Fact.

In their *Hilton* Class Certification Motion, the NFL defendants asserted that "it is plain that the defendant class satisfies Rule 23(a)(2)'s commonality requirement." NFL Defendants' *Hilton* Motion at 14. There, the NFL defendants' also noted that commonality "does not require identity of claims," *Nelsen v. Craig–Hallum, Inc.,* 659 F.Supp. 480, 486 (D.Minn.1987). Finally, they summarized as follows:

> the factual basis for the claim at issue is the NFL clubs' adherence to the first refusal/compensation provisions of Plan B during the 1989 NFL season. Further, the legal question at issue here—whether the League's adherence to Plan B in 1989 exposes the NFL and its member clubs to antitrust liability—is common to each and every class member....

NFL Defendants' *Hilton* Motion at 14. The NFL defendants have since backed away from this position, now stating that the addition of injury and damages issues—which, they claim, will differ for each player—destroys commonality.[4]

■ However, the presence of individual issues does not destroy commonality, as defendants acknowledged in their *Hilton* memorandum. This is particularly true when, as here, common—even identical—issues of liability are present. *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188 (6th Cir.1988); *McCarthy v. Kleindienst,* 741 F.2d 1406 (D.C.Cir.1984); *Cohen v. District of Columbia National Bank,* 59 F.R.D. 84 (D.D.C.1972).

The court does note that the commonality prerequisite may not be satisfied in the future: changed circumstances, newly-discovered facts, and the resolution of various issues may render maintenance of the class impossible. However, as the facts and is-sues currently stand, the commonality prerequisite is satisfied.

4. Typicality.

■ The third enumerated prerequisite is typicality. Rule 23(a)(3). As the NFL defendants noted in their *Hilton* motion, typicality

> is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.

NFL Defendants' *Hilton* Motion at 14. *Paxton v. Union National Bank,* 688 F.2d 552, 561–62 (8th Cir.1982) *cert. den'd,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983) (citations omitted). *See also Littlewolf v. Hodel,* 681 F.Supp. 929 (D.D.C. 1988), *aff'd,* 877 F.2d 1058 (D.C.Cir.1989), *cert. den'd,* 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 832 (1990).

■ There is no question that this standard is met in this case. All members of the class were subject to identical restraints. Although they may not have suffered identical damages, that is of little consequence to the typicality determination when the common issue of liability is shared. *See Littlewolf.*

5. Fair and Adequate Representation.

■ The final prerequisite, Rule 23(a)(4), is that the class representatives "fairly and adequately protect the interests of the class." This determination contains two distinct issues: 1) that the class representatives and their counsel will competently and vigorously prosecute the lawsuit; and 2) that the interests of the class representatives are not adverse to those of the class. *Cohen v. District of Columbia National Bank,* 59 F.R.D. 84, 89 (D.D.C.1972); *Littlewolf,* 681 F.Supp. at 936. These are addressed in reverse order.

a. Adversity of interests among classmembers.

■ The latter of these determinations, adversity of interests, is easily settled. De-

---

**4.** The NFL defendants' position here can be afforded little weight. As mentioned above, the NFL argued in *Hilton* that any player damage claims would be compulsory counterclaims. This case would therefore seem to raise the same damages issues as would have been raised in *Hilton,* where the NFL asked that a defendant class be certified.

fendants assert that the interests of the class members are inherently adverse to each other; as a result, every possible class representative is antagonistic to at least some members of the plaintiff class. The NFL defendants thus assert that the named plaintiffs are inadequate class representatives. Defendants' Opposition at 25–30.

From the record, however, there is ample evidence that the class members share an interest in determining whether the NFL is liable under the anti-trust laws for the implementation of the first refusal/compensation system during the 1989 season. In addition, any player who does feel that his interests are not adequately protected may opt out of the class or obtain independent counsel. With these safeguards, and in light of the common interest the class members share, the alleged adversity does not preclude certification.

### b. Involvement of the class representatives.

■ As to the first concern, defendants posit two arguments. First, they assert that the two named plaintiffs are mere figureheads for the National Football League Players Association (NFLPA), the alleged true party in interest. The named plaintiffs are not actively reading the briefs or participating in the lawsuit on a daily basis, the NFL defendants allege, and thus are inadequate representatives.

However, Rule 23(a)(4) does not require that the class representatives have extensive knowledge of their case. *Foltz v. U.S. News & World Report, Inc.,* 106 F.R.D. 338 (D.D.C.1984). In addition, the fact that the NFLPA funds the litigation is not relevant as the NFLPA is not a party to this case, either as a class representative or as a named plaintiff. There is evidence in the record that the named plaintiffs are not

only willing to participate in the litigation, but already have participated. They have, by any reading, satisfied Rule 23(a)(4)'s standard.

### c. Counsel's conflict of interest.

■ Finally, the NFL defendants note that counsel for the players in this case, the law firm of Weil, Gotshal & Manges, represents the NFLPA in other litigation in which the NFLPA is suing football players, including approximately twenty members of the putative class, for breach of contract.[5] Weil, Gotshal also represents the named plaintiffs in this case and seeks to be counsel for the plaintiff class. Therefore, if the class is certified, Weil, Gotshal would both represent and be adverse to the approximately twenty defendants in the *Golic* case who are also classmembers here. Defendants argue that this conflict precludes a finding that class counsel are adequate, an implicit requirement of Rule 23(a)(4). *In re Fine Paper Antitrust Litigation,* 617 F.2d 22, 27 (3d Cir.1980). The court agrees.

In reply, plaintiffs claim that defendants are attempting to "manipulate and distort the ethical rules." Although plaintiffs' argument is well received,[6] the dual representation is nonetheless a violation of relevant ethical principles, including the relatively lenient rules governing attorney conduct in the District of Columbia. *See D.C. Rules of Professional Conduct* Rule 1.7 (1992). *See also* American Bar Association, *Model Rules of Professional Conduct* Rule 1.7 (1987).

Under D.C. Rule 1.7(b), absent full disclosure to and consent by the affected client (which plaintiffs have not demonstrated here),

> "a lawyer shall not represent a client with respect to a matter if:

---

5. In that case, *NFLPA v. Golic,* C123–92 (N.J.Super.), the NFLPA alleges that several football players violated their licensing contracts with the NFLPA by signing licensing contracts with NFL Properties.

6. The court notes that the NFL defendants have not raised this issue in *McNeil,* pending in Minnesota, in which Weil, Gotshal have success-

fully represented the plaintiffs. Defendants' present use of ethical principles therefore does seem to be based on tactical legal strategy rather than principle. Nonetheless, the court may certify a class only if counsel is adequate. As the court finds an actual conflict here, counsel cannot be adequate and the class cannot be certified.

(1) a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter; [or]

(2) such representation will be or is likely to be adversely affected by representation of another client[.]"

D.C.Rule 1.7(b)(1)–(2). Both of these provisions are violated in this case.

First, Weil, Gotshal's position on behalf of NFLPA in *Golic* is directly adverse to the position of the players involved in both cases. Accordingly, as "[i]t is much to be preferred that a representation that is likely to lead to a conflict should be avoided before the representation begins," D.C. Rule 1.7, Comment ¶ 16, Weil, Gotshal should not assume the representation for the plaintiff class. This is true "even though the lawyer does not represent the other client [here, the players] as to that position or even that matter [the breach of contract litigation]." D.C.Rule 1.7, Comment ¶ 10.

Second, it is likely that Weil, Gotshal's representation of the NFLPA will adversely affect its representation of the player class. The court is deeply troubled by plaintiff counsel's suggestion that,

to prevent *any* possible questions from being raised about the undivided loyalty of counsel, plaintiffs are willing to amend their class certification request to exclude those few NFL players whose contracts expired in 1989 and whom counsel understands have already been sued, or may be sued in the near future, by the NFLPA for breach of contract.

Plaintiffs' Reply at 24. More troubling yet is the footnote comment that

[s]uch an exclusion would hardly be an inequitable result given that these players have damaged the licensing system that funds this and other litigation challenging NFL player movement restraints by breaching their group licensing agreements with the NFLPA.

*Id.* The court is concerned that plaintiffs' counsel could take this position yet still aver that there is no possible conflict of interest. Counsel have, quite simply, offered to betray almost ten percent of the plaintiff class. Such behavior clearly demonstrates that counsel's loyalty truly lies with the NFLPA, not with its members.

In addition, this loyalty likely will have a more specific adverse impact on the player class. In another NFL anti-trust trial before this court, *Brown v. Pro Football, Inc.*, Civ. No. 90–1071 (RCL) (D.D.C.), information concerning non-football earnings was deemed relevant and allowed into evidence. Such confidential information, particularly information concerning licensing contracts, could be used to the players' detriment in the *Golic* breach of contract action (e.g., in the execution of judgments against players). The ethical rules are designed to protect clients from conflicts of interest of this type, and the court therefore finds that the representation is barred by Rule 1.7.[7]

Plaintiffs' counsel attempt to save their representation by (1) questioning whether defendants may raise this issue, (2) noting that there is no argument in defendants' briefs that the NFLPA is not loyal to its players, (3) claiming that there is no question of disclosures of confidential information, and (4) offering to excise any tainted players. None of these arguments is helpful.

■ First, the court has an obligation under Fed.R.Civ.P. 23(a)(4) to ensure that the class is adequately represented, both by the named representatives and by the class counsel:

If in maintaining the class action in [a case] the attorneys should be disqualified because of a conflict of interest, then certainly they are not "generally able to conduct the litigation" and there is inade-

---

**7.** Defendants also question whether a class should be certified so long as the NFLPA is involved. Although the NFLPA funds this suit (as it has several professional football anti-trust cases), it is not a party to the lawsuit (either as a named plaintiff or a classmember) and is not bound by the determinations of this court. Control of the lawsuit is in the hands of the would-be class ·representatives and their counsel, and the presence of the NFLPA as a source of funds does not preclude certification of a plaintiff class.

quate representation of the class's interest.

*In re Fine Paper Antitrust Litigation,* 617 F.2d 22, 27 (3d Cir.1980). As a result, any party, including the court *sua sponte,* may raise inadequacy of counsel issues. Second, it is Weil, Gotshal's loyalty in question, not the NFLPA's, and counsel's offer to abandon twenty classmembers is an explicit demonstration of a lack of the necessary loyalty. Third, the absence of confidential disclosures will not save a representation that is so conflicted on other terms. (Moreover, this ignores the potential, as discussed above, that confidential information could be used to the players' detriment.) Finally, the offer to exclude the twenty players has already been demonstrated to be damaging, not helpful, to counsel's position.

As the court finds that plaintiffs' counsel is inadequate, it cannot certify the class.

### B. *Rule 23(b)(3).*

Under Rule 23, once a class has met the prerequisites of Rule 23(a), the class must then satisfy one of the requirements of Rule 23(b). In this case, plaintiffs seek to have this class certified under Rule 23(b)(3), which requires the following:

> (3) the court [must] find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Both aspects are addressed in turn.

### 1. Predominance of common issues.

■ Defendants assert that the first requirement, predominance of common issues, is not met. Although the NFL's violation of the anti-trust laws, if found, may be common to all plaintiffs, the other two requirements for recovery, injury and damages, are unique to each defendant. As a result, defendants conclude, individual issues predominate over common issues.

As mentioned above, *see* II.A.3., the need for individualized damages determinations does not preclude a finding that common issues predominate. Here, where the NFL's anti-trust liability is common to all players, the court finds that—at least at this stage—common issues do predominate.

### 2. Superiority of the Class Action.

■ The last consideration addresses the suitability of the class action method of adjudication. In this case, the conclusion that the class action is superior cannot seriously be questioned. First, there are approximately 250 plaintiffs, located nationwide, each of whom would have to conduct extensive and expensive discovery in order to demonstrate anti-trust liability. Second, 250 separate trials would certainly be a waste of judicial resources. Moreover, as there is a great risk of inconsistent adjudications if these trials were pursued across the country, a trial in only one forum is justified. And, there is no indication that this class action would be unmanageable or would present any unusual difficulties for the court. In light of these considerations, the court finds that the class action is the superior method of adjudicating plaintiffs' claims.

### III. CONCLUSION.

For the reasons mentioned above, the court finds that the plaintiffs have satisfied all but one of the requirements necessary to certify the plaintiff class under Rule 23(b)(3). The existence of the conflict of interest by counsel for the plaintiffs renders them inadequate counsel and thus prevents the satisfaction of Rule 23(a)(4)'s fair and adequate representation standard. For that reason, the Plaintiffs' Motion for Class Certification is DENIED.

Under Local Rule 203(b), the court will allow plaintiffs leave to file an amended motion for class certification. In that motion, plaintiffs must demonstrate (1) that they have obtained new counsel to represent the class; or (2) that Weil, Gotshal & Manges have ceased their representation of the NFLPA in the *Golic* case and that they have cured all potential conflicts of inter-

est. Such motion must be filed within thirty days of this date.