Michele NILSEN, on Behalf of Herself
and on Behalf of Others Similarly
Situated, Plaintiffs,

v.

YORK COUNTY, Defendant.

Civ. No. 02–212–P–H.

United States District Court,
D. Maine.

Dec. 18, 2003.

David G. Webbert, Johnson & Webbert,
LLP, Augusta, ME, Howard Friedman, Boston, MA, for Plaintiffs.

John J. Wall, III, Monaghan, Leahy, Hochadel & Libby, Portland, ME, Peter T. Marchesi, Wheeler & Arey, P.A., Waterville, ME,
for Defendant.

## ORDER AFFIRMING RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, Judge.

The United States Magistrate Judge filed
with the court on August 27, 2003, with copies to counsel, his Recommended Decision on
Plaintiffs' Motion for Class Certification.
Objections to the Recommended Decision
were filed the parties on September 26, 2003.
I have reviewed and considered the Recom-

mended Decision, together with the entire record, and, after hearing oral argument on December 18, 2003, I have made a *de novo* determination of all matters adjudicated by the Recommended Decision. I concur with the recommendations of the United States Magistrate Judge and AFFIRM the certification of a class action under Fed.R.Civ.P. 23(b)(3).

I DENY certification under Fed.R.Civ.P. 23(b)(2) at this time, not because I am deciding that no such class can be certified, but because deciding the merits of that issue adds nothing to the certification under Rule 23(b)(3). I understand that both parties would prefer a ruling on the merits for purposes of appeal, but I am sufficiently confident that certification under Rule 23(b)(3) is appropriate to defer the investment of judicial time in addressing the more difficult issue under Rule 23(b)(2).

I add limiting language at the end of paragraph (2) of the certification to be consistent with the language of paragraph (1). I believe that is what the Magistrate Judge intended. The class as certified matches almost exactly the class Judge Carter has certified in *Tardiff v. Knox County*, 218 F.R.D. 332 (D.Me.2003). The only significant difference is that this class is somewhat narrower (as requested by plaintiffs), in being limited to searches before a first court appearance.

If the First Circuit does accept the interlocutory appeal of Judge Carter's class certification in *Tardiff*, I urge the parties to agree on how this matter should proceed pending resolution of that appeal.

It is therefore ORDERED that the Recommended Decision of the Magistrate Judge is hereby ADOPTED. The plaintiffs' motion for class certification is GRANTED, but only as to a class under Fed.R.Civ.P. 23(b)(3) and only as to a class defined as follows:

All people strip-searched at the York County Jail after October 14, 1996, under a policy or custom of conducting strip-searches without evaluating individualized reasonable suspicion:

(1) while waiting for bail to be set or for a first court appearance after being arrested on charges that did not involve a weapon or drugs or a violent felony; or

(2) while waiting for a first court appearance after being arrested on a default or other warrant that did not involve a weapon or drugs or a violent felony.

So ORDERED.

### RECOMMENDED DECISION ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [1]

COHEN, United States Magistrate Judge.

Plaintiffs Michele Nilsen and Michael Goodrich move for certification of a plaintiff class in this action challenging the asserted policy and practice of the York County Jail with respect to the treatment of certain arrested individuals. I recommend that the court grant the motion, but only as to a class defined slightly differently than that sought by the plaintiffs.

### I. Applicable Legal Standard

Fed.R.Civ.P. 23(b) provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual member of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications

---

1. The defendant has filed a motion for leave to file a surreply and/or for oral argument on the motion in order that its counsel may "address and clarify what Plaintiff [sic] has characterized [in the reply memorandum] as an inconsistency in the representations of counsel and the arguments advanced by counsel on behalf of the Defendant." Letter dated August 22, 2003 from Peter T. Marchesi to William Brownell (Docket No. 44). Because none of the alleged inconsistencies is relevant to my recommended decision, the motion is denied.

or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

■ Class certification is a matter committed to the discretion of the district court. *Dionne v. Bouley*, 757 F.2d 1344, 1355 (1st Cir.1985). However, the court must undertake a "rigorous analysis" to assure that the requirements of the rule are met. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir.2003). The burden is on the plaintiffs to establish that class certification is appropriate. *Falcon*, 457 U.S. at 157–58, 102 S.Ct. 2364. While this court will construe Rule 23(a) liberally, *Lessard v. Metropolitan Life Ins. Co.*, 103 F.R.D. 608, 610

(D.Me.1984), it remains the plaintiffs' burden to show that all of the prerequisites for class certification have been met, *Makuc v. American Honda Motor Co.*, 835 F.2d 389, 394 (1st Cir.1987). To obtain class certification, the plaintiffs must establish the four elements of Rule 23(a) and one of the several elements of Rule 23(b). *Smilow*, 323 F.3d at 38. The four elements of subsection (a) of Rule 23 are numerosity, commonality, typicality and adequacy of representation. *Id.*

The plaintiffs in this case seek what they characterize as "hybrid class certification," Plaintiffs' Motion for Class Certification ("Motion") (Docket No. 28) at 1–2, meaning that they seek certification of a class under both subsection (b)(2) and subsection (b)(3) of Rule 23. They define the class as follows:

all people strip searched at the York County Jail after October 14, 1996, under a policy of conducting strip searches and a custom of conducting visual body cavity searches without evaluating for individualized reasonable suspicion:

(1) while waiting for bail to be set or for a first court appearance after being arrested on charges that did not involve a weapon or drugs or a violent felony; or

(2) while waiting for a first court appearance after being arrested on a default or other warrant.

Motion at 1.

## II. Factual Background

Plaintiff Goodrich, at all relevant times a resident of Maine, went to the Biddeford, Maine, police station on or about February 12, 2003 after learning that there was a warrant for his arrest for failure to report to probation.[2] Second Amended Complaint,

---

**2.** The defendants contend that plaintiff Nilsen is not an appropriate representative of the proposed class because she was searched at the county jail on January 13, 1999, the incident cited in the complaint, Second Amended Complaint ¶¶ 11–23, on the basis of a reasonable suspicion that she might be concealing drugs or evidence of a drug transaction, Defendant's Objection to Motion for Class Certification, etc. ("Opposition") (Docket No. 33) at 3. The plaintiffs apparently contend that the defendant cannot take this position because their operative answer to the second amended complaint denies

that Nilsen was strip-searched and did not claim that this search was based on reasonable suspicion in its response to interrogatories. Plaintiffs' Reply to York County's Opposition to Class Certification ("Reply") (Docket No. 38) at 9–10. They cite no authority in support of this argument. They concede that Nilsen would not be an appropriate class representative "[i]f it is true" that she was strip-searched based on individualized reasonable suspicion, but ask the court to ignore Nilsen rather than to allow them to conduct the discovery on this point that they now seem to believe necessary, because Goodrich "is a proper

etc. (Docket No. 24) ¶¶ 9, 24. He was arrested and taken to the York County Jail, where he was placed in a holding cell. *Id.* ¶¶ 25–26. He was strip-searched by a county corrections officer and later placed into the general jail population. *Id.* ¶ 27. Specifically, Goodrich was taken to a small bathroom where he was ordered to take off all of his clothing and hand it to a male corrections officer who stood in the doorway. Affidavit of Michael Goodrich ("Plaintiff's Aff.") (Exh. 2 to Motion) ¶ 6. When Goodrich was completely naked, the officer ordered him to squat and cough. *Id.* ¶ 7. When Goodrich squatted, the officer could view his anus. *Id.* Goodrich was released on bail after appearing in court. Second Amended Complaint ¶ 28. He will be on probation until May 2005. Plaintiff's Aff. ¶ 13. Any violation of the conditions of his probation could result in his being arrested and taken again to the York County Jail. *Id.*

### III. Analysis

In their reply memorandum, the plaintiffs state that "[m]inor details like ... whether [inmates] are asked to squat and cough are not significant to the claim," and that "[e]ven under the defendant's version of the facts" the common question in the case is whether a search or seizure occurs for purposes of the Fourth Amendment "when corrections officers routinely view each detainee's naked body during a clothing search" if the officers do not have the intent to view the naked body. Reply at 4–5. Given these statements and the facts that (i) the only possible "visual body cavity search" of Goodrich mentioned in his affidavit is his compliance with an order to squat and cough, (ii) there is a lack of any reference to visual body cavity searches in the demand for declaratory and injunctive

relief, Second Amended Complaint at 8, and (iii) there is a lack of discussion of visual body cavity searches in the reply memorandum, it appears that specific reference to visual body cavity searches should be deleted from the proposed class definition before any other analysis takes place.[3] *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130–31 (1st Cir.1985) (upholding trial court's limitation of scope of requested class).

The defendant does not challenge plaintiff Goodrich's ability to meet the requirements of Rule 23(a). Instead, while assuming without conceding that the elements of Rule 23(a) are present, it chooses to focus on the elements of Rule 23(b). Opposition at 13. The plaintiff does not invoke Rule 23(b)(1), Motion at 11–21, and I accordingly will not consider that option.

With respect to Rule 23(b)(2), the defendant argues that Goodrich is not an appropriate representative of the class which he seeks to have certified, that Goodrich lacks standing to seek the relief available under that subsection of the rule, and that certification under subsection 23(b)(2) is not available because the primary relief sought by the second amended complaint is monetary. Opposition at 14–22. The latter argument is dispositive.

▮ The plaintiffs seek declaratory and injunctive relief as well as compensatory damages and a jury trial. Second Amended Complaint ¶ 1 & pp. 8–9. If money damages predominate, certification of a class under subdivision (b)(2) is not available. *Ramirez v. DeCoster*, 194 F.R.D. 348, 352 (D.Me.2000).

In determining whether money damages predominate [Judge Hornby[4] follows] the standard enunciated by the Fifth Circuit:

---

class representative" in any event. *Id.* at 10. Under the circumstances, the appropriate action is to strike Nilsen as a potential class representative, rather than to leave the question hanging until some indefinite future time at which the plaintiffs may or may not choose to conduct further discovery on the issue. My analysis accordingly deals only with Goodrich. The factual allegations concerning Charles Neville, a newly-allowed plaintiff intervenor, do not differ significantly from those concerning Goodrich. Charles Neville's Intervener's [sic] Complaint, etc. ("Intervenor Complaint") (Docket No. 43) ¶¶ 30–37. I note further that the plaintiffs' contention that

the defendant "concedes" at page 14 of its opposition memorandum "that Mr. Goodrich is a proper class representative," Reply at 10, incorrectly characterizes the defendant's position.

3. The allegations in the complaint of the intervening plaintiff, Charles Neville, do not mention anything that might reasonably be characterized as a visual body cavity search. Intervenor Complaint ¶¶ 30–37.

4. This case is assigned to Judge Hornby.

"monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief.... By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir.1998) (internal citations omitted) (emphasis in original).

*Id.* As was the case in *Ramirez*, the only injunctive relief sought by the plaintiffs in this case is to enjoin the defendant from continuing an alleged policy of strip-searching certain detainees, relief that is not likely to benefit most of the members of the class because of the unlikelihood that they will ever be arrested and detained again in the York County Jail. The same is true of the request for declaratory relief. The "crux" of the case, *id.*, then, is the request for compensatory damages. This legal remedy requires individualized jury determinations of damages for each class member, at least to the extent that each such plaintiff may have been affected differently by the application of the challenged policy. Also significant, as it was in *Ramirez, id.* at 351, is the fact that the plaintiffs here have demanded a jury trial. The plaintiffs are not entitled to certification of a class under Rule 23(b)(2) under the circumstances of this case. *See generally Lemon v. International Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 580–81 (7th Cir.2000).

■ With respect to the requested certification under Rule 23(b)(3), the defendant contends that Goodrich is not an appropriate class representative,[5] that questions of fact affecting individual members of the proposed class predominate over those common to members and that a class action is not superior to other means of adjudicating the claims of members of the proposed class. Opposition at 22–33.

The defendant cites no authority in support of its first argument, merely asserting that Goodrich is not a member of "that portion of the proposed class" that includes individuals charged with certain felonies and that he would only be an appropriate class representative if the class were redefined to exclude detainees charged with felonies. *Id.* at 14. A class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (citation and internal quotation marks omitted). In the absence of any developed argumentation demonstrating why Goodrich does not possess the same interest and did not suffer the same injury as those members of the proposed class charged with felonies, this contention cannot serve as the basis for denial of class certification. *See generally Dodge v. County of Orange*, 208 F.R.D. 79, 89–90 (S.D.N.Y.2002).[6]

■ The defendant's second argument is that "peculiar and anomalous factual questions abound" in this case, predominating over questions of fact or law common to members of the proposed class, and certification accordingly would be improper. Opposition at 25. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Here, the defendant contends that

[i]n order to determine whether any individual member of the proposed class is entitled to relief, it will be necessary to determine whether the individual was

---

5. The basis for this argument, that Goodrich was not charged with a felony and thus may not represent a class including individuals arrested on felony charges that do not involve weapons, drugs or violence, Opposition at 14, applies equally to Neville, who by the terms of his complaint was arrested on a misdemeanor charge, Intervenor Complaint ¶ 30.

6. This argument appears to refer to the requirement of Rule 23(a)(4) that the representative will fairly and adequately represent the interests of the class, but it is made separately by the defendant despite its assertion that consideration of "all sections of Rule 23(a) and its requirements is unnecessary" to resolve the pending motion. Opposition at 13. Because the argument is nonetheless raised separately by the defendant, I consider it separately.

searched, why the individual was searched ..., the nature of the search itself, the place in which the search was conducted, and the manner in which it was conducted.... Put another way, the Court will have to determine the circumstances of each inmate's incarceration to determine whether any violation occurred.

Opposition at 25. The plaintiffs respond that [e]ach potential class member, held in the York County Jail while awaiting bail or a first court appearance, was made to take off her or his clothes and display her or his naked body pursuant to York County's policy and custom. Each potential class member was strip searched in this manner without any evaluation for individualized reasonable suspicion. Because this was a "blanket" strip search done without individualized reasonable suspicion, it was unconstitutional.

Reply at 11. They further note that "[c]entral to the claims of all the plaintiffs will be a legal decision regarding whether the Fourth Amendment review turns on the stated intent of the corrections officer." *Id.* at 12.

■ Most of the "peculiar and anomalous factual questions" identified by the defendant are resolved by the definition of the proposed class. Individuals who were not searched, were searched somewhere other than the York County Jail, or searched based on individualized reasonable suspicion will not become members of the class in the first place. They are not to be considered when the question before the court is whether members of the proposed class present common questions of law or fact that predominate over individual questions of law or fact. The question why each class member was searched appears to be irrelevant for purposes of this litigation; the class definition limits members to those who were strip-searched. With respect to the merits of the action, the members of the proposed class do present a common issue that can be said to predominate, "even though other important matters will have to be tried separately." 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1778 at 529 (2d ed.1986). That issue is whether the defendant implemented a uniform, indiscriminate policy of strip-searching all detainees included in the class definition in the absence of reasonable suspicion, in violation of the Constitution. *See generally Maneely v. City of Newburgh,* 208 F.R.D. 69, 75, 76–78 (S.D.N.Y.2002) (listing decisions of courts faced with class certification motions under similar factual circumstances and concluding that the common issue, virtually identical to that presented in this case, was sufficient under Rule 23(b)(3)). I also find persuasive the analysis on this issue, under similar factual circumstances, of the courts in *Mack v. Suffolk County,* 191 F.R.D. 16, 24–25 (D.Mass.2000), and *John Does 1–100 v. Boyd,* 613 F.Supp. 1514, 1530 (D.Minn.1985). The fact that damages may vary by individual class member does not preclude a finding that a common question (or questions) of law or fact predominates. *Smilow,* 323 F.3d at 40; *Bynum v. District of Columbia,* 214 F.R.D. 27, 39 (D.D.C.2003).

Finally, the defendant contends that a class action is not superior to other means of adjudicating the claims of the potential class members. Opposition at 26–31. Specifically, it asserts that the individual members of the proposed class "have both the interest and the means to control their own claims," which cannot be characterized as seeking only nominal damages, and "to the extent that attorney's fees are available pursuant to 42 U.S.C. § 1988," individual actions would be economically feasible. *Id.* at 28. In addition, the defendant contends that "logistical problems associated with class actions and the uniqueness of the individual claims tips [sic] the balance against class action." *Id.* It argues that "[t]he circumstances of each search, the physical effects on each arrestee, and the emotional response of each arrestee will necessarily be different for each member of the class." *Id.* at 31. The plaintiffs respond that many plaintiffs will not seek individual vindication, the defendant's admittedly uniform practice could result in inconsistent verdicts in individual cases and individual damage claims are not likely to be very large. Reply at 13–14. They also contend that, given the existence of a uniform policy and the defense necessarily asserted by the County—that individualized reasonable suspicion is not re-

quired before it may require detainees to disrobe completely—no consideration of the specific aspects of each class member's experience is necessary.

I agree that the members of the proposed class would be unlikely to pursue individual actions arising out of the application of the defendant's policy to them. It is not possible to predict the amount of damages a jury might award for a single unconstitutional strip-search that took place in the presence of a single corrections officer of the same sex as the detainee, but the narrowness of the class definition makes it unlikely that individual damage awards would vary widely if the claims were presented to a single jury. The defendant has not demonstrated that the claims of the members of the proposed class are likely to be "unique" at all. As the First Circuit has noted, if a wide variance in damages becomes more likely as matters progress, the court may modify or de-certify the class with respect to damages at a later date. *Smilow,* 323 F.3d at 41. Contrary to the representation of the defendant, a careful reading of the second amended complaint does not indicate that the physical effects of each search, if any, are at issue in this case. A single reference to unspecified "logistical problems associated with class actions" in general adds nothing to the defendant's argument. If such problems were enough to prevent class certification, it would never occur. On balance, the superiority factor does not require denial of the motion for certification of a class under Rule 23(b)(3) in this case.

### IV. Conclusion

For the foregoing reasons I recommend that the plaintiffs' motion for class certification be **GRANTED**, but only as to a class under Fed.R.Civ.P. 23(b)(3) and only as to a class defined as follows:

All people strip-searched at the York County Jail after October 14, 1996 under a policy or custom of conducting strip-searches without evaluating for individualized reasonable suspicion:

(1) while waiting for bail to be set or for a first court appearance after being arrest-

ed on charges that did not involve a weapon or drugs or a violent felony; or

(2) while waiting for a first court appearance after being arrested on a default or other warrant.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated: Aug. 27, 2003.